Kramer vs. Willy and another.

Kramer, Administratrix, Appellant, vs. Willy and another, Respondents.

*February 23 — March 19, 1901.*

*Master and servant: Death from boiler explosion: Negligence of repairer: Contributory negligence: Necessity of pressure test.*

1. In an action to recover for the death of an engineer who was killed by the explosion of a boiler of which he had charge in defendants' mill, it appeared, among other things, that three days before the explosion the deceased discovered a small leak in a horizontal seam in the boiler; that he reported it to defendants, who thereupon employed a skilled boiler repairer to do whatever was necessary; that such repairer made a careful visual examination and a hammer test without discovering any signs of weakness, and then calked the seam and stopped the leak; that he also asked the deceased whether he should make a pressure test, but was told not to do so; and that the explosion occurred the following day when steam was generated in the boiler and had reached a pressure of between ninety and a hundred pounds. Plaintiff's evidence also showed that it was not customary for repairers to take other precautions than those taken, and no negligence prior to the discovery of the leak was claimed. Inspection of the boiler after the explosion showed that there was an old crack in the underlying lap of steel, extending several feet horizontally between the rows of rivets, which, however, did not extend through the whole thickness, and could not have been discovered either by external or internal inspection or by sound. *Held*, that the defendants were not liable.

2. At least as much knowledge of the necessity of a pressure test in a boiler in which a leak has been stopped by calking is to be imputed to a trained engineer as can be assumed by a court by virtue of its imputed acquaintance with merely the common knowledge on that subject.

APPEAL from a judgment of the circuit court for Outagamie county: FRANK M. FISH, Judge. *Affirmed*.

. Suit by plaintiff, who is administratrix and widow of William H. Kramer, deceased, to recover damages for his death, resulting January 17, 1899, on the explosion of a steam boiler, the property of, and in the flouring mills of, the defendants.

The plaintiff's evidence disclosed that the deceased at the time of his death was thirty-three years of age; that up to about nine years before he had been a farmer. At that time he came to Appleton, and was apprenticed to the tinner's trade, and worked at various occupations until 1895, when he became employed as a fireman for the defendants, and was employed in that capacity, either by them or others, from that time to some four months before his death. During a considerable part of the time of his employment by the defendants as a fireman he served as engineer, and something like four months before the accident he became their chief engineer, and thence up to the time of his death had charge of their boilers and steam power. The boiler in question had been used about four years, and was manufactured for the defendants by manufacturers having reputation amongst the best boiler makers in the United States, and was of superior materials. It was sixteen feet long by seventy-two inches in diameter, consisting of a steel shell three eighths of an inch thick, with seams fastened with a double row of rivets two and one-half inches apart, and rested upon a brick foundation. The boiler had been in continuous use and carefully cared for, and needed no repairs until a few days previous to the explosion, when the deceased discovered a slight leak in a horizontal seam. He notified the owners on Sunday, January 15th, who employed one Fairbanks, running the only boiler shop in Appleton, with large experience and good standing and repute as a repairer of boilers. After looking at the boiler, he indi- .

cated a portion of the brick wall needing to be removed, and the following day came, and, under the directions of the deceased, proceeded to examine and repair the boiler. He examined it carefully inside and out, discovered no defects after emptying and filling it with water two or three times, except the slight leak referred to, and attempted to calk it. As he did so, the leak, which had formerly been for only some four inches of the seam, extended along until he had completed his calking for a distance of several feet and stopped the leak. He then inquired of the deceased, "Shall we test the boiler?" to which deceased replied, "No; it is not necessary." He accordingly went away, the brick foundation was replaced, steam generated the following day, and when it reached somewhere between ninety and 100 pounds pressure the boiler exploded, killing the deceased, who was engaged in his duties about the same. It was then found that in the underlying lap of steel, at about the place where the leak had been, was an old crack extending horizontally a distance of some feet between the two rows of rivets. This crack did not extend through the whole thickness of the metal, but varied in depth from one sixteenth of an inch to nearly the whole thickness, and is assumed to have been the cause of the explosion. It could not be discovered by either external or internal inspection nor by sound. Plaintiff's witnesses all testified that, if there were any reason to apprehend a defect, the proper precaution was to test the boiler by a cold-water pressure test, and that thereby the defect in question would have been discovered; also that, if calking was effective to stop the leak, one would not apprehend such defect. The defendants had no knowledge of the condition of the boiler save such as they derived from the deceased himself. The leak was such a one as ordinarily an engineer would repair without sending for a boiler maker.

At the close of plaintiff's evidence, on motion, judgment of nonsuit was granted, from which the plaintiff appeals.

For the appellant there was a brief by *A. M. Spencer*, attorney, and *John Bottensek*, of counsel, and oral argument by *Mr. Bottensek*.

*Lyman E. Barnes*, for the respondents.

Dodge, J. The case made by plaintiff's evidence, though accorded the most favorable inference, clearly fails to show any negligence by defendants in ascertaining and maintaining the safety of the boiler which the deceased operated. Due care in its original purchase is affirmatively shown. Frequent and careful inspection by the engineer in charge is also proved up to the time when it passed into the care of the deceased. There is no evidence as to such precautions during the four months of his control, but such omission cannot adversely affect defendants, both because negligence must be proved affirmatively, and because, if there were omission of usual precaution in this respect, it would be the negligence primarily of the plaintiff's intestate. But, indeed, there is no claim of any negligence during any period preliminary to the discovery of the leak on the Saturday preceding the Tuesday of the explosion. Of this leak the defendants are not shown to have had any knowledge except such as they derived from the deceased, who was in charge of the apparatus, a man of mature years, who had, to the knowledge of defendants, between four and five years' experience in operation of boilers either as fireman or engineer, and who, by accepting the latter position, had asserted his own qualifications. Upon his notification, the defendants employed a boiler repairer of standing and repute to do what was necessary, under decedent's directions. It is difficult to conceive any greater care which they could have exercised for their employee's safety, except, perhaps, to discharge him from the employment in proximity to a leaking boiler.

But plaintiff contends that at this point the boiler repairer

became the representative of the employer, and that he was guilty of omission to do all that could have been done to ascertain whether there was other defect in the boiler than mere opening of seams; insists that he might have cut away the bolts, and examined the steel plates where they lapped over each other, and might have applied the water-pressure test, either of which would have disclosed the crack or fissure which existed. Plaintiff's witnesses testify that customarily nothing of the sort would be done if calking proved effective to stop the leak, and that, if any suspicion of weakness were justified, the usual precaution would be to test the boiler. The repairer, Fairbanks, excluded responsibility for the leak of any break in the iron by careful visual examination and by the hammer test, and he effectually stopped the leak by calking. Under the evidence, he might consistently with due care have stopped there, but he did not. He submitted to the plaintiff's intestate the question whether he should make a test of the boiler, and was by him directed not to do so. It appears conclusively by plaintiff's testimony that this conduct was not negligent; that it was the usual and customary caution under the circumstances.

Counsel, however, urges that we must hold as matter of common knowledge that the omission of the pressure test is negligence, since it might have disclosed the weakness. This contention, if sustained, must equally defeat plaintiff's recovery; for her intestate voluntarily accepted the risk of such omission with full knowledge of its occurrence. To him, a trained engineer, is certainly to be imputed as much knowledge of the necessity or propriety of such test as can be assumed by a court by virtue of its imputed acquaintance with merely the common knowledge on the same subject. If we can know that such omission was negligence, certainly he must have known it and must be chargeable with assumption of any risk so occasioned. To summarize the

situation: The evidence fails to disclose any omission by the defendants of the precautions usual and customary, and, as to the only omission of any precaution, shows affirmatively that it occurred with the knowledge and assent of the plaintiff's intestate. Under rules of law, now so trite as to call for neither reiteration nor citation of authority, the defendants cannot be held liable, and judgment of nonsuit was proper.

*By the Court.*— Judgment affirmed.